UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| MIKE LANG, MARK GIANGRECO, DAVID GRIPP, JOHN KARAVIDAS, CHRIS LANG, RON LAVIN, BRIAN McCORMICK, JOHN RIDGE, TERRY SHOEMAKER, KEN WEISLAK, and JOHN WILTGEN, <br><br> Plaintiffs, <br><br> v. <br><br> BANCPRO, INC., <br><br> Defendant. | Case No.: 07-cv-6424 <br><br> Judge David H. Coar <br><br> Magistrate Judge Michael T. Mason |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF JURISDICTION

Plaintiffs, Mike Lang, Mark Giangreco, David Gripp, John Karavidas, Chris Lang, Ron Lavin, Brian McCormick, John Ridge, Terry Shoemaker, Ken Weislak, and John Wiltgen (collectively, the "Noteholders"), submit this Memorandum in Support of Jurisdiction pursuant to the Court's Order entered February 12, 2008. (Doc. No. 17.)

### INTRODUCTION

This case arises out of breaches of contract by Defendant, BancPro, Inc. ("BancPro"), in failing to repay multiple loans made to BancPro by the Noteholders that are or were evidenced by promissory notes. BancPro is in default on its obligations under the promissory notes and, thus, is liable to the Noteholders.

The Court has personal jurisdiction over BancPro because a substantial portion of BancPro's activities giving rise to this litigation occurred in this District and BancPro was properly served with a Summons and the Complaint and Amended Complaint. The Court has subject matter jurisdiction over the claims of Noteholders Mike Lang and Mark Giangreco

because there is complete diversity of citizenship, and because the amounts in controversy with respect to Lang and Giangreco individually exceed $75,000. The Court has subject matter jurisdiction over the claims of the remaining Noteholders because there is complete diversity of citizenship, and because their claims form part of the same Article III case or controversy as those of Lang and Giangreco.

## PERSONAL JURISDICTION

The Court has personal jurisdiction over BancPro because: (a) BancPro actively solicited loans from Illinois citizens and its agents traveled to Illinois multiple times on business relating to the loans; and (b) the Noteholders have properly served BancPro. BancPro's activities are sufficient to confer jurisdiction on this Court. As the Seventh Circuit recently observed:

> It has been long-established that, when an individual undertakes activity designed to have a purpose and effect in the forum, the forum may exercise personal jurisdiction over that person with respect to those activities.

S.E.C. v. Homa, --- F.3d ----, Nos. 06-3320, 07-1590, 2008 WL 191203, *10 (7th Cir. Jan. 24, 2008).

The Noteholders have invoked the Court's diversity jurisdiction over their claims against BancPro. (Am. Compl. ¶ 13.) "[I]n a diversity case a federal court has personal jurisdiction over a defendant 'only if a court of the state in which [the federal court] sits would have jurisdiction.'" IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc., 437 F.3d 606, 609 (7th Cir. 2006). The Illinois long-arm statute, which "authorizes jurisdiction consistent with federal due process standards for minimum contacts," New Process Steel, L.P. v. PH GR, Inc., 107 Fed. Appx. 641, 642 (7th Cir. 2004), provides for specific personal jurisdiction over any entity with respect to "[t]he transaction of any business within this State" or "[t]he making or performance of any contract or promise substantially connected with this State," and provides for general personal

jurisdiction over any "natural person or corporation doing business within this State." 735 ILCS 5/2-209(a)(1), (a)(7), (b)(4).

BancPro has submitted to the jurisdiction of Illinois courts, and thus this Court, by conducting business in Illinois. BancPro solicited hundreds of thousands of dollars, in multiple loans, from a group of Illinois residents. (Am. Compl. ¶ 15.) Moreover, although physical presence in the forum state is not necessary for personal jurisdiction, Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 781 (7th Cir. 2003), BancPro's officers and representatives have visited Illinois on multiple occasions to conduct BancPro's business, including activities relating to the loans at issue. (Am. Compl. ¶ 15.) Finally, the Noteholders brought BancPro under the Court's personal jurisdiction by effecting valid service of process on BancPro. (ECF Doc. Nos. 9, 14.)

## SUBJECT MATTER JURISDICTION

1. **Diversity Jurisdiction**

The Court has original subject matter jurisdiction over the claims of Noteholders Mike Lang and Mark Giangreco under the federal diversity statute, which provides, in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States;
>
> * * *
>
> For the purposes of this section . . . a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . .

28 U.S.C. § 1332(a), (c). In this action, Lang and Giangreco seek the payments due on promissory notes totaling $663,500 and $410,000, respectively, plus interest, and thus each independently satisfies the "amount in controversy" requirement. (Am. Compl., ¶¶ 17-30, Prayer

for Relief a., b.) Lang and Giangreco are Illinois citizens, and, pursuant to the diversity statute, BancPro is a citizen of Arizona and Colorado. (Am. Compl. ¶¶ 1, 2, 12.) Thus, the Court has original subject matter jurisdiction over the claims by Lang and Giangreco.

2.      **Supplemental Jurisdiction**

The Court has supplemental jurisdiction over the claims of Noteholders Gripp, Karavidas, Chris Lang, Lavin, McCormick, Ridge, Shoemaker, Weislak, and Wiltgen (collectively, the "Remaining Noteholders") under the federal supplemental jurisdiction statute, which provides, in pertinent part:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Where a court has original diversity jurisdiction over at least one plaintiff's claim and there is complete diversity of the parties, the court has supplemental jurisdiction over the claims of additional plaintiffs not meeting the amount-in-controversy requirement of 28 U.S.C. § 1332, so long as the additional claims form part of the same case or controversy. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 559 (2005). See also Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 931 (7th Cir. 1996) (explaining, "§ 1367(a) . . . allows suit by a pendent plaintiff who satisfies the diversity requirement but not the jurisdictional amount").

Once a court determines it has supplemental jurisdiction, it has discretion whether to exercise that jurisdiction only in limited circumstances. "The word 'shall' in section 1367(a) is construed 'to mean that a federal court must exercise supplemental jurisdiction if it is found to exist.'" In re Methyl Tertiary Butyl Ether Prods. Liability Litig., 510 F. Supp. 2d 299, 320 n.98

(S.D.N.Y. 2007) (quoting 16 James Wm. Moore et al., Moore's Federal Practice § 106.61 (3d ed. 1997)). Consequently, a court must exercise its supplemental jurisdiction unless one of the four bases for declining jurisdiction listed in 1367(c) applies, in which case exercise of jurisdiction is discretionary. The four circumstances allowing for exercise of such discretion are:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, there is complete diversity of the parties, as all Noteholders are Illinois citizens and BancPro is a citizen of Arizona and Colorado. (Am. Compl. ¶¶ 1-12.) As discussed above, the Court has original subject matter jurisdiction over the claims of Noteholders Lang and Giangreco, each of whom satisfies the amount-in-controversy requirement. Therefore, the Court would also have subject matter jurisdiction over the claims of the Remaining Noteholders so long as "they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a).

Multiple claims constitute the same Article III case or controversy where they "derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient." First Options of Chicago, Inc. v. Davis, Miner, Barnhill & Galland, P.C., 72 F.3d 1294, 1299 (7th Cir. 1995) (quoting Ammerman v. Sween, 54 F.3d 423 (7th Cir. 1995)).

The Noteholders' claims are all part of the same Article III case or controversy. BancPro solicited loans from a close-knit group of Illinois investors, all members of a common social and

business network, which BancPro referred to as the "Lang Group." (Am. Compl. ¶ 15; Lavin Decl., attached as Exhibit A, and the sixth page of the Exhibit thereto (listing a liability of "N/P-Short Term-Lang Group").) The Noteholders' promissory notes were all identical in form and were all issued by BancPro. (Am. Compl. ¶ 52, Exhs. A, C-H.) They were also all signed by the same BancPro officer, Ross Murphy. (Id.) Given these facts, this case presents precisely the type of situation where district courts have exercised their supplemental jurisdiction over claims of additional plaintiffs not meeting the amount-in-controversy requirement.

For example, <u>Anderson v. Docuport, Inc.</u>, No. 06-cv-3069, 2007 WL 485342 (S.D.N.Y. Feb. 13, 2007), concerned "the issuance of a number of [promissory] notes by the same small company, over a limited period of time, as part of a common scheme or plan." Id. at *2. Four plaintiffs alleged that Docuport had defaulted on various promissory notes, and all but one of the plaintiffs met the amount-in-controversy requirement. The court determined it had subject matter jurisdiction over all of the claims, stating:

> The claims all arise from notes allegedly issued by the same corporation between December 1999 and January 2001. Clearly a single plaintiff holding all of these notes would ordinarily be expected to join all of his claims and try them all in the same judicial proceeding. Although each claim arises from the issuance of a specific note, and thus represents a distinct transaction, a "common nucleus of operative facts" binds all of the claims, particularly when the matter is addressed in a practical fashion with respect to the claims and defenses actually raised here: the notes were apparently issued by the same corporate officer as part of what is clearly a common scheme or plan.

Id. Similarly here, all of the Noteholders' claims arise from notes issued by the same corporate officer of the same corporation under a common scheme or plan.

<u>DAKDT, Inc. v. All Green Acquisition Corp.</u>, No. 06-cv-076, 2007 WL 1875536 (D.N.D. June 28, 2007), is also instructive. In <u>DAKDT</u>, four franchisees alleged their franchisor had breached its separate license agreements with them by failing to perform various obligations

6

under the agreements. Because one of the plaintiffs did not satisfy the amount-in-controversy requirement, the court analyzed supplemental jurisdiction, ultimately concluding it had jurisdiction. The court reasoned:

> In this case, the Court finds that the Plaintiffs' claims all arise out of the same "case or controversy" because the claims arise from the same "common nucleus of operative fact," namely the alleged breach of near-identical licensing agreements by All Green. The single alleged wrong gives rise to each of the Plaintiffs' claims and request for relief. The Plaintiffs' claims arose from the same set of facts; the claims involve virtually identical license agreements; there was one breach of contract which affected all of the Plaintiffs when All Green allegedly discontinued performing under the terms of the license agreements; and all Plaintiffs seek the same or similar relief. It is likely that the Plaintiffs would expect that the near-identical claims would be tried in one judicial proceeding since recovery hinges on whether All Green breached the license agreements. Thus, it is clear that the Plaintiffs' claims derive from the same common nucleus of operative facts.

Id. at *7. The Noteholders—all members of the "Lang Group"—likewise would expect their near-identical claims to be tried in one proceeding, as they seek the same relief for BancPro's series of defaults on near-identical promissory notes. In other words, the Court has supplemental jurisdiction.

Finally, under the law, supplemental jurisdiction must be exercised unless any of the circumstances listed in 28 U.S.C. 1367(c) apply. In this case, none do. The Remaining Noteholders' claims are straightforward and do not present novel state-law issues; the claims of the Remaining Noteholders do not predominate over those of Lang and Giangreco; the Court has not dismissed any claims; and this case does not present any exceptional circumstances that would compel declining jurisdiction.

## **CONCLUSION**

For these reasons, the Noteholders respectfully request that the Court enter an Order finding that it has jurisdiction over the Noteholders' claims and grant their Motion for Entry of Default.

Dated:  February 27, 2008                    Respectfully submitted,

/s/ W. Joel Vander Vliet
Peter F. Lovato, III
Ellen D. Jenkins
W. Joel Vander Vliet
BOUNDAS, SKARZYNSKI, WALSH & BLACK, LLC
200 E. Randolph Drive, Suite 7200
Chicago, IL  60601
312-946-4200

Attorneys for Plaintiffs

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| MIKE LANG, MARK GIANGRECO, DAVID GRIPP, JOHN KARAVIDAS, CHRIS LANG, RON LAVIN, BRIAN McCORMICK, JOHN RIDGE, TERRY SHOEMAKER, KEN WEISLAK, and JOHN WILTGEN, <br><br> Plaintiffs, <br><br> v. <br><br> BANCPRO, INC., <br><br> Defendant. | Case No.: 07-cv-6424 <br><br> Judge David H. Coar <br><br> Magistrate Judge Michael T. Mason |

**DECLARATION OF RON LAVIN IN SUPPORT OF
PLAINTIFFS' MEMORANDUM IN SUPPORT OF JURISDICTION**

I, Ron Lavin, under penalty of perjury, declare as follows:

1. I am a plaintiff in the above-captioned proceeding. I have personal knowledge of the facts stated in this Declaration and could competently testify thereto if called upon to do so as a witness in this action.

2. I make this Declaration for the purpose of proving and verifying facts supporting the Court's jurisdiction over the claims against BancPro, Inc. ("BancPro") asserted in this action.

3. I received a letter from BancPro's Chief Executive Officer, Ross Murphy, dated March 22, 2007, which enclosed BancPro's income statement and balance sheet. I recognize the

signature on the letter as that of Mr. Murphy. A true and correct copy of the letter and enclosures is attached to this Declaration.

I make this Declaration pursuant to 28 U.S.C. § 1746, and declare under penalty of perjury that the foregoing is true and correct.

Executed on 2/25/08

Ron Lavin

*ROSS MURPHY*
*1745 S Alma School Road, Suite #205*
*Mesa Arizona 85210*
*Telephone: 480-730-1500*
*Facsimile: 480-730-1501*
*rossleemurphy1951@hotmail.com*

March 22, 2007

Ron Lavin
150 Aspen Way
Deerfield Illinois 60015

Dear Ron:

Please find enclosed the IMSure Network Income Statement; the BancPro Income Statement and the BancPro Balance Sheet. Also enclosed is a copy of the Warrants. I appreciate your patience and support of our companies. I will give you a call in the next few days to discuss this information more fully.

In the meantime, if you have any questions, please do not hesitate to give me a call.

Sincerely,

*[signature: Ross Murphy]*

Ross Murphy
CEO


RLM/esh

enclosure

IMSure Network
Income Statement
For the Eleven Months Ending November 30, 2006

|  | Current Month | Year to Date |
|---|---:|---:|
| **Revenues** | | |
| B2B Hosting Fees | $ 0.00 | $ 0.00 |
| B2C Hosting Fees | 35.00 | 2,260.10 |
| DNS Addressing | 0.00 | 0.00 |
| Domain Hosting Fees | 0.00 | 0.00 |
| Licensed Site Development | 5,333.34 | 25,788.01 |
| Monthly Hosting Fees | 3,054.78 | 21,023.51 |
| Transaction Fees | 680.50 | 8,956.50 |
| Web Design | 15,000.00 | 54,900.00 |
| Web Site Modifications | 0.00 | 17,210.00 |
| Web Trends | 10.00 | 185.10 |
| ShipFlex Service Fees | 4,793.94 | 26,980.06 |
| Shipflex Implementation Fee | 0.00 | 4,833.33 |
| Misc. Income | 125.00 | 135.00 |
| **Total Revenues** | 29,032.56 | 162,271.61 |
| | | |
| **Cost of Sales** | | |
| Customer Discounts | 0.00 | 60.58 |
| Merchant Service Fees | 267.80 | 2,973.43 |
| **Total Cost of Sales** | 267.80 | 3,034.01 |
| | | |
| **Gross Profit** | 28,764.76 | 159,237.60 |
| | | |
| **Expenses** | | |
| Automobile Expense | 0.00 | 0.00 |
| Accounting Expense | 0.00 | 0.00 |
| Bad Debt | 0.00 | 0.00 |
| Bank Service Charges | 99.77 | 1,096.45 |
| Contract Services | 877.10 | 121,712.05 |
| Contributions | 0.00 | 0.00 |
| Consulting Fees | 5,333.34 | 5,333.34 |
| Computer Expenses | 0.00 | 6,570.26 |
| Depreciation Expense | 0.00 | 0.00 |
| Donations | 0.00 | 0.00 |
| Dues and Subscriptions | 0.00 | 10,723.80 |
| Insurance - Health | 10,054.22 | 122,196.13 |
| Insurance - General | 1,715.40 | 13,842.49 |
| Interest Expense | 0.00 | 807.61 |
| Data & Serv Lines Expense | 1,690.95 | 23,025.50 |
| Finance Charges | 74.52 | 592.77 |
| Late Payment Fees | 210.28 | 693.70 |
| Leasing Pmts | 603.19 | 4,752.82 |
| Licenses and Permits | 19,500.00 | 214,982.00 |
| Maintenance Expense | 0.00 | 1,005.67 |
| Marketing & Advertising | 0.00 | 7,372.58 |

Handwritten annotations: "4 employees" and "How many employees?" near Total Revenues; "Rent, Related Party?" near Cost of Sales section.

IMSure Network
Income Statement
For the Eleven Months Ending November 30, 2006

|  | Current Month | Year to Date |
|---|---:|---:|
| Outside Services | 0.00 | 250.00 |
| Miscellaneous Expense | 191.00 | 3,097.24 |
| Office Supplies | 0.00 | 1,767.57 |
| Payroll - Admin | 16,132.74 | 125,868.51 |
| Payroll - Sales | 5,833.32 | 139,621.83 |
| Payroll - Techs | 11,750.04 | 246,266.22 |
| Postage and Delivery | 0.00 | 1,371.69 |
| Payroll Taxes | 2,579.26 | 41,996.71 |
| Printing and Reproduction | 0.00 | 1,217.64 |
| Professional Fees | 0.00 | 750.00 |
| Legal Fees | 0.00 | 7,053.56 |
| Rent Expense | 6,669.90 | 72,633.90 |
| Building Repairs | 0.00 | 0.00 |
| Computer Repairs | 0.00 | 0.00 |
| Equipment Repairs | 0.00 | 0.00 |
| Telephone Expense | 661.43 | 8,674.08 |
| Entertainment Expense | 0.00 | 280.00 |
| Meals Expense | 310.33 | 3,815.25 |
| Travel Expense | 147.11 | 17,944.37 |
| Utilities Expense | 0.00 | 0.00 |
| Other Expenses | 0.00 | 0.00 |
| Total Expenses | 84,433.90 | 1,207,315.74 |
| Net Income | ($ 55,669.14) | ($ 1,048,078.14) |

BancPro, Inc.
Income Statement
For the Ten Months Ending February 28, 2007

|  | Current Month |  | Year to Date |  |
|---|---:|---:|---:|---:|
| **Revenues** | | | | |
| Discount Income | 0.00 | 0.00 | 0.00 | 0.00 |
| Gain on Note | 0.00 | 0.00 | 0.00 | 0.00 |
| Gain or Loss on Stock Sale | 9,300.00 | 100.00 | 762,550.00 | 56.16 |
| Other Income | 0.00 | 0.00 | 0.00 | 0.00 |
| Interest Income | 0.00 | 0.00 | 595,333.33 | 43.84 |
| Loan Fee Income | 0.00 | 0.00 | 0.00 | 0.00 |
| Fee Discounts | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Revenues** | 9,300.00 | 100.00 | 1,357,883.33 | 100.00 |
| | | | | |
| **Cost of Sales** | | | | |
| Cost of Sales | 0.00 | 0.00 | 0.00 | 0.00 |
| Cost of Sales - Commissions | 1,860.00 | 20.00 | 157,710.00 | 11.61 |
| Cost of Sales- Salaries and Wa | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Cost of Sales** | 1,860.00 | 20.00 | 157,710.00 | 11.61 |
| **Gross Profit** | 7,440.00 | 80.00 | 1,200,173.33 | 88.39 |
| | | | | |
| **Expenses** | | | | |
| Advertising Expense | 0.00 | 0.00 | 2,399.00 | 0.18 |
| Accounting Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Amortization Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Auto Expenses | 0.00 | 0.00 | 0.00 | 0.00 |
| Bad Debit Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Bank Charges | 0.00 | 0.00 | 662.75 | 0.05 |
| Charitable Contributions Exp | 0.00 | 0.00 | 207.73 | 0.02 |
| Computer Expense | 94.97 | 1.02 | 1,704.73 | 0.13 |
| Consulting Fees | 0.00 | 0.00 | 5,000.00 | 0.37 |
| Contract Labor | 1,000.00 | 10.75 | 10,190.00 | 0.75 |
| Depreciation Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Dues and Subscriptions Exp | 0.00 | 0.00 | 1,283.85 | 0.09 |
| Financing Expenses | 4.50 | 0.05 | 5.40 | 0.00 |
| Freight Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Income Tax Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Insurance - Group Health | 7,127.18 | 76.64 | 71,575.11 | 5.27 |
| Insurance - General | 6.76 | 0.07 | 74.35 | 0.01 |
| Interest Expense | 1,600.00 | 17.20 | 3,431.24 | 0.25 |
| Lease Pmt Expense | 150.72 | 1.62 | 1,656.94 | 0.12 |
| Legal Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Licenses Expense | 0.00 | 0.00 | 45.00 | 0.00 |
| Loss on NSF Checks | 0.00 | 0.00 | 0.00 | 0.00 |
| Maintenance Expense | 0.00 | 0.00 | 465.58 | 0.03 |
| Meals and Entertainment Exp | 0.00 | 0.00 | 3,549.81 | 0.26 |
| Misc. Expense | 123.81 | 1.33 | 2,555.05 | 0.19 |
| Office Supplies | 300.67 | 3.23 | 1,989.65 | 0.15 |
| Other Taxes | 0.00 | 0.00 | 0.00 | 0.00 |
| Payroll Tax Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Payroll - Administrative | 0.00 | 0.00 | 0.00 | 0.00 |
| ADP Service Expense | 0.00 | 0.00 | 35.00 | 0.00 |
| Penalties and Fines Exp | 0.00 | 0.00 | 0.00 | 0.00 |
| Postage Expense | 318.99 | 3.43 | 937.81 | 0.07 |
| Printing Expense | 0.00 | 0.00 | 480.29 | 0.04 |
| Rent Expense | 446.76 | 4.80 | 4,494.01 | 0.33 |
| Repairs Expense | 0.00 | 0.00 | 0.00 | 0.00 |

For Management Purposes Only

BancPro, Inc.
Income Statement
For the Ten Months Ending February 28, 2007

|  | Current Month | | Year to Date | |
|---|---|---|---|---|
| Supplies Expense | 0.00 | 0.00 | 521.53 | 0.04 |
| Telephone Expense | 390.10 | 4.19 | 9,303.87 | 0.69 |
| Transportation Collection Fees | 0.00 | 0.00 | 0.00 | 0.00 |
| Travel Expense | 269.92 | 2.90 | 13,645.74 | 1.00 |
| Overnight Del. Expense | 0.00 | 0.00 | 3,894.28 | 0.29 |
| Wages Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Other Expense | 0.00 | 0.00 | 0.00 | 0.00 |
| Loss on disposal of investment | 0.00 | 0.00 | 0.00 | 0.00 |
| Purchase Disc- Expense Items | 0.00 | 0.00 | 0.00 | 0.00 |
| Gain/Loss on Sale of Assets | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Expenses | 11,834.38 | 127.25 | 140,108.72 | 10.32 |
| Net Income | $ (4,394.38) | (47.25) | $ 1,060,064.61 | 78.07 |

BancPro, Inc.
Balance Sheet
February 28, 2007

### ASSETS

| | | |
|---|---:|---:|
| **Current Assets** | | |
| Regular Checking | $ 112.26 | |
| Trust Acct - Nat. Bank of AZ | (159,797.79) | |
| PaineWebber CK Acct | (2,516.74) | |
| A/R - Intelemedia | 11,859.70 | |
| Prepaid Interest | 40,000.00 | |
| Furniture Broker | 5,665.76 | |
| Employee Advances | (593,845.62) | |
| Intercompany - MediPro | 573,857.61 | |
| Intercompany - CFM | 1,520,721.02 | |
| Investments | 95,078.93 | |
| Interest Receivable | 2,544,066.65 | |
| N/R - Other | 49,540.67 | |
| Marketable Securities - Niche | 24,640.00 | |
| Marketable Securities - IMSure | 1,592,422.20 | |
| Warrants - IMSure | 10,000.00 | |
| Marketable Securities - Inteleme | 1,520,822.00 | |
| Total Current Assets | | 8,420,317.89 |
| | | |
| **Property and Equipment** | | |
| Furniture and Fixtures | 20,343.16 | |
| Equipment | 49,170.38 | |
| Accum. Depreciation-Furniture | (60,704.00) | |
| Total Property and Equipment | | 8,809.54 |
| | | |
| **Other Assets** | | |
| Investment - PricePallet, Inc. | 103,724.41 | |
| N/R - Intelemedia | 720,784.40 | |
| N/R - Telstar | (540.39) | |
| N/R - IMSure Network | 5,067,516.14 | |
| N/R - Transportation | 259,423.19 | |
| Allow for dbtfl accts-USTS | (268,018.00) | |
| N/R - Legal Accts. | (11,308.16) | |
| N/R - Callbutton | 507,434.77 | |
| Deposits | 9,830.50 | |
| Preffered Stock - Intelimedia | 50,000.00 | |
| Total Other Assets | | 6,438,846.86 |
| | | |
| Total Assets | $ | 14,867,974.29 |

### LIABILITIES AND CAPITAL

| | |
|---|---:|
| **Current Liabilities** | |
| Accounts Payable | $ 111,533.76 |
| Accrued Expenses | 30,000.00 |
| Accrued Interest | 1,504,262.94 |
| Income Taxes Payable | 100.00 |
| Other Taxes Payable | (900.00) |
| N/P - Short Term | 2,512,889.49 |
| N/P - Short Term-Lang Group | 1,078,000.47 |
| N/P - Barber & Barrett | 99,550.81 |
| Suspense - Clearing Account | 24,667.00 |

Unaudited - For Management Purposes Only

BancPro, Inc.
Balance Sheet
February 28, 2007

|  |  |  |
|---|---:|---:|
| Total Current Liabilities |  | 5,360,104.47 |
| Long-Term Liabilities |  |  |
| N/P - MediPro | 226,581.90 |  |
| Unamortized Discount on Stk | (1,100.06) |  |
| Total Long-Term Liabilities |  | 225,481.84 |
| Total Liabilities |  | 5,585,586.31 |
| Capital |  |  |
| Preferred Stk - Series A | 1,587,026.00 |  |
| Common Stock | 2,973,565.84 |  |
| Retained Earnings | 2,529,741.87 |  |
| Unrealized Appreciation of Stk | 1,374,285.66 |  |
| Dividends Paid | (242,296.00) |  |
| Net Income | 1,060,064.61 |  |
| Total Capital |  | 9,282,387.98 |
| Total Liabilities & Capital | $ | 14,867,974.29 |

Unaudited -- For Management Purposes Only